Vivian **CALHOUN** et al.

v.

A. O. **LATIMER** et al.

Civ. A. No. 6298.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 15, 1962.

A. T. Walden, Donald L. Hollowell and E. E. Moore, Jr., Atlanta, Ga., Constance Baker Motley, Thurgood Marshal and N. Amaker, New York City, for plaintiffs.

J. C. Savage and Newell Edenfield, Eugene Cook, Atty. Gen. of Georgia, A. C. Latimer, Atlanta, Ga., for defendants.

HOOPER, District Judge.

### STATEMENT OF THE CASE.

This Court on January 20, 1960 approved a Plan of desegregation proposed by defendant Atlanta Board of Education. Details of that Plan may be obtained by reference to Calhoun v. Members of Board of Education, D.C., 188 F.Supp. 401 and D.C., 188 F.Supp. 412. On September 13, 1960 the Court provided the Plan in question should begin in September, 1961 and apply to the eleventh and twelfth grades of the schools. The Plan has been in operation for the two school years beginning September, 1961 and September, 1962 respectively, and

pursuant thereto fifty-three Negro students have transferred from schools previously Negro schools to schools previously all white schools. This was done peaceably and without violence, largely due to the unusually effective methods employed by the Mayor of Atlanta, its Chief of Police, and all groups working in concert with them.

The Plan adopted by this Court on January 20, 1960 was the Plan which was adopted upon the insistence of plaintiffs in order to comply with the mandates of the United States Supreme Court and other courts, to the effect that discrimination should cease and that compulsory segregation should no longer be enforced in the Atlanta Public Schools.

It is significant to note that the Plan in question at the time of its adoption met with the approval of these plaintiffs. An appeal from this Order of Court was filed but upon motion of the plaintiffs was permitted to be dismissed by the Court of Appeals.

## GROUNDS OF THE MOTION.

A large part of the motion filed April 30, 1962 is couched in vague and indefinite terms and is largely a repetition of charges made against defendants concerning discrimination before the Plan had been put into operation. Thus plaintiffs seek an injunction against defendants "from continuing to maintain and operate a segregated bi-racial school system," from "continuing to assign pupils to the public schools upon the basis of race and color," from "continuing to designate schools as Negro or white," from maintaining "racially segregated extra-curricular school activities."

Complaint is also made of alleged assigning of teachers and others on basis of race and color and maintaining a dual system of school attendance area lines.

██ ██ There is no disputing that discrimination had existed prior to the Order of this Court of January 20, 1960, and that the Order of that date was designed to eliminate the discrimination over a period of years. Even plaintiffs'

counsel upon the original trial disclaimed any purpose of seeking to have "wholesale integration." The only question then involved was the plan by which discrimination could be eliminated; a Plan was carefully prepared and adopted and no appeal taken. The Plan is eliminating segregation, but until it has completed its course there will of course still be areas (in the lower grades) where segregation exists. The Court is therefore at a loss to see how anything could be accomplished at this time by "an order enjoining defendants from continuing to maintain and operate a segregated, bi-racial school system," for the Court has already taken care of that in its decree of January 20, 1960. There is no evidence that defendants are "continuing to designate schools as Negro or white," nor that they are maintaining "racially segregated extra-curricular school activities."

The assigning of teachers and other personnel on the basis of race and color is not now passed upon but is deferred (as other courts have done) awaiting further progress made in the desegregation of the students.

██ The objection to said Plan of Desegregation which most impressed this Court related to the charge that it caused discrimination between a Negro transferring to a grade in a previously white school, in that certain tests were required for the transfer to which the white students promoted to the same grade were not subjected. At the hearing of this motion, however, it appeared without dispute that defendants beginning in September 1962 had ceased using the tests required of transfers as used theretofore. In lieu thereof as of September 1962 the school authorities gave to all pupils in the school system a nationally recognized test known as the "School and College Ability Test" (SCAT). (See Transcript, p. 22.) Testimony of Superintendent John Letson shows that this test was given to all students, Negro and white, and this testimony was not disputed. Proximity of the pupil to the

school involved was also considered by the Board, as were certain other criteria contained in the Plan approved by this Court on January 20, 1960.

Neither does the evidence show that defendants are maintaining a "dual system of school attendance area lines." Proximity to the schools in question is a factor considered by the defendant Board. It is not shown that defendants are acting arbitrarily in connection with the assignment of pupils in relation to their distance from the school. It does appear that area lines (where such exist) are sometimes changed for the sole purpose of relieving over-crowded conditions in the schools.

## PLAINTIFFS' PROPOSED NEW PLAN.

The original motion filed by plaintiffs on April 30, 1962 made certain attacks on the Plan of Desegregation established January 20, 1960, but did not make any complaint that the Plan contemplated too much time for the completion of the desegregation. Not until the Court required the parties to file Findings of Fact and Conclusions of Law did it occur to plaintiffs to make any effort to speed up the transition. However, on July 20, 1962 plaintiffs filed a paper entitled "Plaintiffs Proposed Plan of Desegregation," which does bear some similarity to the Plan adopted by the Court on January 20, 1960, already in operation for a period of two years. However, the Proposed Plan accelerates the dates to which the various grades might be integrated (which in September 1963 include the ninth, tenth, eleventh and twelfth grades) so that in September 1965 "all pupils and personnel in grades one, two and three shall be desegregated in the same manner in which the other grades are desegregated, as set forth above."

This suggestion by plaintiffs' counsel that the Court summarily speed up the Plan already adopted without any evidence to show that the new Plan is practicable or feasible, is no doubt inspired by one or more recent decisions by appellate courts which do summarily estab-

lish a Plan of Desegregation. In all such instances, however, that action was taken by appellate courts because the school authorities in question had not proposed a Plan, or the district judge in question had not ordered a Plan. This Court finds no precedent for a trial judge summarily changing and speeding up a Plan, already in operation for two years, without some facts or circumstances requiring the same.

When this Court approved the Plan on January 20, 1960 many local conditions mitigating against a more speedy transition were considered (see 188 F. Supp. 401), these factors included the following:

There were in Atlanta 116,000 pupils, of which approximately forty per cent, or some 46,400, were Negroes. There was a rapid influx of children of school age into the city and a shortage of some 580 class rooms, many classes then being held in churches and other buildings, and many having double sessions. Other problems confronted the School Board, caused by slum clearances and changes in residential patterns, to which may now be added complications arising out of large tracts of land being condemned for expressways.

The United States Supreme Court has ordered that segregation be eliminated "with deliberate speed," and has invested the trial judges in the first instance with some discretion, bearing in mind all local conditions, as to the timing of a Plan of Desegregation. The Plan heretofore approved by this Court, and now under attack, has been administered fairly and in good faith by defendant Atlanta Board of Education, the local authorities have given utmost cooperation in maintaining law and order, and the number of students being transferred each year from previously designated colored schools to previously designated white schools is increasing at an accelerated rate each year as the lower grades are reached. This Court feels that the public interests demand that the Plan now in operation be continued according to its terms and not be sum-

marily displaced by the new Plan of Desegregation proposed by plaintiffs.

For reasons set forth above plaintiffs' motion for further relief and plaintiffs' motion to adopt a Proposed New Plan of Desegregation are denied.